OPINION:
‘That by the words in the act of general assembly of the may session, in the year 1779, intituled an act concerning officers, soldiers, sailors and marines, ‘officers who have or shall become supernumerary on the reduction of battalions and shall again enter into the service, if required so to do, and continue therein until the end of the war, shall be intitled to half pay during life, to commence from the determination of their command or service,’ the officers intended to be provided for were of two classes; one, those who had continued in the service *until their battalion was reduced, and their command determined, and were not required to enter again into the service: and the other, those who, after the reduction of their battalion, were required to enter, and did enter, again into the service, and continued in it until the end of the war; and that the said words ought to be interpreted thus: officers who have or shall become supernumerary shall be intitled to half pay during life, to commence from the determination of their command, if they were not required to enter again into the service and refused to do so; and officers who have or shall become supernumerary and shall again enter into the service if required so todo, shall be entitled to half pay during life, to commence from the determination of their service;’ because by any other interpretation, the words, ‘command or,’ in the last member of the sentence would not only be superfluous but have no meaning; and because the words, although they may be interpreted in another sense, ought to be interpreted in a sense most beneficial for the officers whom the general assembly were inviting into their service by offers of gratuities the most liberal in their power to make, but this court is of opinion that by the latter part of the act of general assembly, made in the year 1790, intituled An act giving compensation of half pay to certain officers of the state line, such of the petitioners as belong to the first of the two classes before mentioned are so distinguished from officers of the other class that the petitioners are not intitled to half pay by that-part of the act, although the court can not believe that the general assembly intended to deprive them of it, being unable to divine any reason for the distinction. Nevertheless this court is of opinion that *251 by the former part of the last mentioned act the officers, who were discharged by proper authority, and not required to enter again into service after the 30 day of no-vember, in the year 1782, that is in february following, are intitled to their half pay no less than those who were not discharged before 22 day of april, in that year, to whom the compensation for half pay hath been allowed; because the former may be said, with as much propriety as the latter, to have continued in the service until the end of the war, since they were in the service on the said 30 day of november, when the provisional articles between the united states of America and the king of Great-britain were done, by the seventh article whereof it was agreed that there should be a peace between those parties, and their respective citizens and subjects, and that all hostilities should cease, and by the ninth article restitution was agreed to be made of whatever might be conquered by the arms of either from the other before the arrival of those articles in America: ^'whereas if the end of the war was not before the definitive treaty of peace between the same parties, which was done the 3 of September, 1783, those officers who were discharged before that day, that is those who were discharged on the 22 „day of april, 1783, had not served until the end of the war;’
And decreed the auditor to allow half pay for life, or, in lieu thereof (b) five years commutation, to such of the plaintiffs as should appear to be entitled thereto according to the foregoing opinion.
Prom which decree the defendents, on their prayer, were allowed an appeal.
In justification of this opinion, which differeth from that of the court of appeals, upon the later are submitted these
REMARKS.*
The opinion of the court of appeals consists of these x^ropositions:
1. Officers who continued in the service until the end of the war, are intitled to half pay during life, to commence from the determination of their service.
2. Officers, who were restrained, b3' being prisoners of war, or on parole, or otherwise, from continuing in the service until *the end. of the war, are intitled to half pay during life, to commence from the determination of their command, this proposition is not explicitly stated, but is implied in the opinion.
3. Officers, who became supernumerary on reduction of their battalions, and again entered into the service having been required so to do, and continued therein until the end of the war, are intitled to half pay during life, to commence from the determination of their service.
4. Such supernumerary officers as did not enter, although they were not required to enter, again into the service, are not in-titled to half pay during life. This proposition follows from the word ‘only’ in that part of the opinion from which is formed the next preceding proposition.
5. Officers to be intitled to half pay during life, must have continued in the service until the signature of the provisional articles, here called the preliminary articles of peace between the united states of America and the king of Great-britain, was notified to the governor of the commonwealth, and duly signified by him to the officers.
The first proposition is admitted by all. and upon it partly is founded the decree of the high court of chancery, as is there explained.
The second proposition may be doubted until the statute can be shewn, by which half pay for life was promised to those officers, who were hindered, by being prisoners of war, or by being on parole, OR were hindered OTHERWISE, from continuing in the service until the end of the war. but if the proposition be true, the conclusion from it is thought to be opposite to the conclusion, drawn by the court of appeals. for if an officer hindered from continuing in service until the end of the war, by being a prisoner, or on parole, OR hindered OTHERWISE, be intitled to half pay during life a supernumerary officer who not being required to enter again into the service, is hindered from continuing in the service until the end of the war, no less effectually than the officer who is an immured captive, or is enlarged1 on parole, seems no less intitled.
The third proposition is true, but the plaintiffs cannot intitle themselves by it; because, if they were properly supernumerary officers, they did not, after they became so, enter again into the service.
The fourth proposition is founded, as is *252 conceived, in a misconstruction of the act of 1779.
Two arguments are stated in .the decree of the court of chancery, to prove that the act ought so to be expounded as to intitle the supernumerary officers who were not required, after reduction *of their battalions, to enter again into the service, to half pay during life: first, that, otherwise, the words, ‘command or,’ in the act, would have no meaning, as will be manifest to one who reads the act without those words; for he will see, if they be left out, it hath exactly the meaning which the court of appeals have given to it, with them; whereas the words, ‘command or,’ applied to supernumerary officers, not required to enter again into service, are significant: second, that the act, if it could be expounded in two senses, ought to be expounded in the sense which is most beneficial to the officers, for the reason there mentioned, to which, after premising that the act of 1779, in its nature, is a compact between the commonwealth and the officers, the author of that decree, now adds, thirdly, the parties entering into the compact may reasonably be supposed to have treated and concluded in some such form as this:
COMMONWEALTH.
We agree to allow to you officers, who will serve us in our army until the end of the war, half pay, during your lives, to commence from the determination of your service.
OEEICERS.
We are willing to serve for the stipend you offer, but you may deprive us or some of us, of it, by disbanding your army, or part of it before the end of the war.
COMMONWEALTH.
If we disband our army, or part of it, before the end of the war, we will allow to you, who thereby become supernumerary, half pay during your lives to commence from the determination of your respective commands: but upon this condition, which no doubt you will think" just, that you shall enter again, if we require you to enter again, into our service, and continue therein until the end of the war in which last case your half pay shall commence from the determinination, not of your command but of your service.
OEEICERS.
To all this we agree; and accordingly we enter into your service, whether the act of 1779 ought not to be expounded, as such articles would have been expounded? is referred to the candid and judicious, fourthly, where one party hindereth another from performing a duty, by which he would earn a reward, the hindrance is in fraud of the party willing to perform; from which fraud he who practiseth it ought not to derive benefit, nor ought the other to lose that to which he would otherwise have been intitled. and in this case the commonwealth hindered the officers from performing the duty by which he would have earned a reward, and fifthly, the words of the act, ‘if, being required again to enter, they again do enter, into the service, and continue in it until the end of the war,’ seem the denun-tiation of a penalty for breach of duty, the half pay would be earned by service before the officers became supernumerary, but, to secure their future service, if it should be requisite, they should forfeit the half pay, if they failed afterwards to perform another duty enjoined, this duty was again entering into the service, if they were required, and continuing in it until the end of the war. but if they were not required again to enter into the service, no duty was enjoined to be performed, and consequently by failure to perfom the duty no forfeiture was incurred.
Therefore that the plaintiffs, if they had been officers in the battalions, for whom the act of 1779 provided, upon the supposition that they were supernumerary officers, would have been intitled to half pay, is thought to be evinced.
But they are believed not to have been comprehended in that act, nor to be intitled to the half pay, which is allowed to officers in the battalions, unless it be by the act passed in 1790, giving the compensation of half pay to certain officers of the state line.
The words of that act are, ‘that the same compensation of half pay should be extended to those officers of the state line who continued in actual service to the end of the war, as was allowed to the officers of the continental line; and also to those who became supernumerary, and, being after-wards required, did again enter into actual service, and continue therein to the end of the war.’
The act, in the latter part of it, includeth supernumerary officers, who did again enter into actual service, only; and consequently doth not include the plaintiffs, who confess themselves not to have entered again into the service.
If then the plaintiffs be intitled to half pay, it must be by the former part of this act, that is, they must have been, not supernumerary officers but, officers who continued in actual service to the end of the war. so that whether this can be predicated of them? is the question, which will lead us to consider
The fifth proposition of the court of appeals.
The plaintiffs are admitted to have been in actual service before *and on the 30th day of november, 1782, when the provisional articles were done, and to have continued in the service until february afterwards, when they were discharged by order of the executive.
If the war ended when those articles were done the plaintiffs, by the terms of the act, by the terms of the compact, if the act of 1779 be in the nature of the compact, and by the terms of the act of 1790, were intitled to their half pay, to commence from feb- *253 ruary, 1783, the determination of their actual service.
The provisional articles prove the war to have been ended by that act.
The articles indeed were not to be conclusive until the terms of a peace should be agreed upon between Great-britain and I? ranee. but when those terms were agreed upon the articles were conclusive, and they were an act of the day on which they were done, not of the day on which the terms of peace between Great-britain and Trance were agreed upon, if the terms of peace between Great-britain and France had not been agreed upon, the provisional articles would not have been in force from the be-gining; this being true, its converse, if the terms of peace between Great-britain and France were agreed upon, the provisional articles were in force from the begining, must also be true, yea, the court of appeals theirselves in this opinion admit the war to have been ended by those articles, for,
If the war was not ended by the provisional articles, it was not ended before the definitive treaty in September, 1783; (c) but the court of appeals have allowed those officers who were in service until april, one thousand seven hundred and eighty three, to be intitled to half pay, and therefore the war to have ended when the provisional articles were done, (d)
If the war was ended by the provisional articles why are not the officers who continued in the service until the signature of those articles, including the plaintiffs, in-titled to their half pay? because, say the court of appeals, officers, to be intitled to half pay, must have continued in the service until the signature of the articles was notified to the governor and signified by him to the ^officers, (e) did the commonwealth agree with the officers that they should not be intitled to half pay, unless they woud continue in service until such notification and signification? do the statutes declare so? when the statutes had enacted, that officers who continued in service until the end of the war, should receive half pay during life, can any court, without assuming the power to change the law, determine, that the officers shall not receive haif pay, although they shall have served until the end of the war, unless they shall moreover have continued in the service until a notification to the governor, that the war was ended: and this too, notwithstanding the officers continued in service until they were discharged by the governor, and were not required to enter into it again? and hath any court power to change the law? if these questions be answered negatively, as probably they will be, the principal question, namely, whether officers, who continued in service until the provisional articles were done, and after-wards until they were discharged, be intitled to half pay, must be answered affirmatively. _

 This alternative was inserted because the court of appeals, as was said and seemed admitted, bad allowed it in some cases where the clames for half pay were sustained. — Note in edition of 1795.

The Chancellor's remarks are on the appeal from the decision of the General Court. The appeal from his decision was not determined fill after his work was published.
On appeal, the decree of the High Court of Chancery was unanimously reversed in 1797. See the case, Innis, Attorney General, &c., v. Roane and als. 4 Call. 379, which decides,
"The proclamation of government is the only evidence that war is at an end, and peace estab - fished.
“For the constituted authorities are the arbiters of peace and war ; and their declaration that war is ended is decisive : and no averment lies against it.
“ Therefore, the supernumerary officers, who retired after the date of the preliminary articles between Great .lirilian and the XJ. States, and before peace was announced by proclamation, were not intitled to the half pay promised by the act of 1779, to those who served to the end of the. war.
“The half pay promised by that statute was a bounty ; and therefore the officers who claim it, must show exact performance, by haying returned into service when called, and serving through the whole war afterwards.
“For substantial performance never entitles to a bounty, as the claimant has no equity.
“There can be no contract without mutual obligation.
“ If a judgement of reversal states that it ‘is not to bar or prejudice any future claim of the appellee, made on fuller proof to the auditor,’ and the new case does not differ from the former, the first judgment concludes the cause.” — Ed.—Note in edition of 1852.

 No man will pretend that the proclamation by the governor of Virginia, one of thirteen confederated states, could end the war which was prosecuted by the british king against all those states united ; and if the war ended not by the governors proclamation, it must have ended by the provisional articles, or the definitive treaty. — Note in edition of 1795.

 This is not a mere argumentum ad homines, but is conclusive in this case ; the supreme court, by determining those officers to be intitled who did not continue in the service nntil the definitive treaty, having implicitly decided the war to have ended before. — Note in edition of 1795.

 By this doctrine, the officer who was nnluckily discharged a few weeks, or a few minutes, before official notification of the peace to the executive, instead of being gratified by enjoyment of those delectable things, the promise of which had tempted him to enter into the service of the commonwealth. and encouraged him to continue, so long as they would permit him to continue, in their service, with the thirst and appetite of Tantalus.
Nec bibit inter anuas, nec poma natantia carpit.— Petronius Arb. — Note in edition of 1795.